**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| RED ATLAS, INC., ) | |
| ) | Civ. Num. 26-_____ (___) |
|     Plaintiff, ) | |
| ) | |
| v. ) | COMPLAINT FOR: |
| ) | |
| IEM INTERNATIONAL, INC.; ) | Misappropriation of Trade Secrets |
| INNOVATIVE EMERGENCY ) |     under the Defend Trade Secrets Act, |
| MANAGEMENT, INC.; and ) |     18 U.S.C. §§ 1836 et seq. |
| DOES 1–3, ) | Breach of Contract |
| ) | Unjust Enrichment |
|     Defendants. ) |     (in the alternative) |
| ) | |
| ) | JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff RED Atlas, Inc. ("RED Atlas"), by and through its undersigned counsel, brings this action against Defendants IEM International, Inc., Innovative Emergency Management, Inc., and Does 1–3, and alleges as follows:

**I.  NATURE OF THE ACTION**

1.    RED Atlas operates Puerto Rico's most comprehensive proprietary real estate intelligence platform (the "Platform"), which integrates data from the Puerto Rico Property Registry, the Centro de Recaudación de Ingresos Municipales ("CRIM"), municipal permitting offices, and additional public and private data sources into a single, searchable, analytics-ready system. The Platform aggregates more than 140,000 listing records, tracks more than 1.4 million properties, and chronicles more than 1.5 million property transactions.

- 1 -

2.    Defendants—IEM International, Inc. and its affiliated entity Innovative Emergency Management, Inc. (collectively, "IEM")—obtained access to the Platform through a $499 annual personal/professional subscription, then used that access to perform commercial work under a $24,485,614.80 federal program management contract with the Puerto Rico Department of Housing ("PRDOH"). IEM's use of RED Atlas's proprietary Platform to fulfill IEM's obligations to a third-party government client violated the express terms of the limited license RED Atlas granted, misappropriated RED Atlas's trade secrets, and unjustly enriched IEM at RED Atlas's expense.

3.    RED Atlas brings this action under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq., for breach of contract, and, in the alternative, for unjust enrichment, and seeks compensatory damages, exemplary damages of double damages under the Defend Trade Secrets Act because the misappropriation was willful and malicious, and attorneys' fees.

## II.  JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over the federal claim under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) because the claim arises under the Defend Trade Secrets Act of 2016. The trade secrets at issue are related to products and services used in, and intended for use in, interstate commerce.

5.    This Court has supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

6.    This Court has personal jurisdiction over Defendants. IEM International, Inc. is registered to do business in Puerto Rico as a foreign corporation. Innovative Emergency Management, Inc. is the named contractor on a multi-million-dollar program

management contract with the Puerto Rico Department of Housing. Defendants' relevant conduct—including the creation and use of an account on RED Atlas's Puerto Rico–based Platform, performance of the PRDOH Contract, and use of Platform-derived outputs in connection with that contract—occurred substantially in Puerto Rico.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Puerto Rico, and under 28 U.S.C. § 1391(b)(1) because Defendants are subject to personal jurisdiction in this District.

### III. THE PARTIES

8. Plaintiff RED Atlas, Inc. is a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in San Juan, Puerto Rico.

9. Defendant IEM International, Inc. is, on information and belief, a Delaware corporation with its principal place of business at 2801 Slater Road, Suite 200, Morrisville, North Carolina 27560. IEM International, Inc. is registered to do business in Puerto Rico as a foreign corporation.

10. Defendant Innovative Emergency Management, Inc. is, on information and belief, an entity affiliated with or operating in concert with IEM International, Inc., and is the named contractor on Request for Proposals No. CDBG-DRMIT-RFP-2023-05 awarded by the Puerto Rico Department of Housing. Defendants IEM International, Inc. and Innovative Emergency Management, Inc. are referred to collectively as "IEM."

11. Defendants Does 1 through 3 are persons or entities, presently unknown to RED Atlas, that participated in or benefited from the conduct alleged in this Complaint, including any subcontractors, affiliates, or successor entities. RED Atlas will amend this Complaint to identify each Doe Defendant once that Defendant's identity is ascertained.

## IV.  FACTUAL ALLEGATIONS

### A.  RED Atlas's Platform and Trade Secrets

12.     Since its founding, RED Atlas has invested substantial time, capital, and human resources to design, build, and maintain its proprietary Platform.

13.     The Platform aggregates real estate data covering Puerto Rico that is otherwise siloed across multiple government agencies, private sources, and unstructured records, and presents that data in an integrated, searchable, analytics-ready form.

14.     The Platform contains the following protectable trade secrets, identified herein with reasonable particularity (collectively, the "RED Atlas Trade Secrets"):

  (a) the proprietary process by which RED Atlas ingests, normalizes, deduplicates, and integrates data from disparate sources—including the Puerto Rico Property Registry, the CRIM tax registry, municipal permitting offices, and additional public and private feeds—into a single coherent dataset;

  (b) the proprietary matching and linking logic by which the Platform associates property listings, parcels, ownership records, transactions, and permits across these otherwise siloed sources;

  (c) the Platform's automated valuation model and the underlying algorithms used to generate property valuations and analytics; and

  (d) the Platform's report-generation engine and the structure, format, and content of the proprietary outputs delivered to subscribers.

15.     The RED Atlas Trade Secrets derive independent economic value, actual and potential, from not being generally known to or readily ascertainable by other persons who could obtain economic value from their disclosure or use.

16. The data sources the Platform integrates  are not aggregated or linked by any government agency in Puerto Rico. Nor are those data sources  commercially available in integrated form, and they are difficult, costly, and time-consuming to collect, clean, normalize, and link individually.

17. RED Atlas takes reasonable measures under the circumstances to maintain the secrecy of the RED Atlas Trade Secrets, including: (a) restricting access to the Platform to authenticated subscribers operating under written Terms of Service; (b) prohibiting redistribution, scraping, automated extraction, and commercial use through those Terms of Service; (c) limiting employee and contractor access to confidential information on a need-to-know basis; (d) maintaining secure systems and access controls; and (e) requiring confidentiality protections in its commercial agreements.

18. The Platform is the principal asset of RED Atlas and the foundation of its commercial operations.

19. RED Atlas licenses access to the Platform on tiered terms, ranging from limited personal/professional accounts to enterprise subscriptions appropriately sized for large-scale or institutional users.

## B. RED Atlas's Terms of Service

20. Access to the Platform is governed by RED Atlas's Terms of Service (the "TOS"), which every user must accept upon obtaining access.

21.    The TOS expressly grants only "a limited, revocable non-exclusive, non-transferable license to access and use the RED Atlas [Platform] set forth in the Order Form during the Term solely for Customer's internal business purposes." TOS § C.7.1.

22.    Section B.3 of the TOS expressly prohibits commercial use, redistribution, and use for the benefit of third parties. It provides, among other things, that the user "agree[s] to use the Service solely for [the user's] own noncommercial use and benefit, and not for resale or other transfer or disposition to, or use by or for the benefit of, any other person or entity."

23.    Section B.3 further provides that the user "may not recirculate, redistribute or publish the analysis and presentation included in the Service without RED ATLAS's prior written consent," and that the user "may not use the Service in any way to improve the quality of any data sold or contributed by [the user] to any third party."

24.    Section B.4(i) of the TOS provides that any download from the Platform "is licensed to [the user] by RED Atlas ONLY for [the user's] own personal, noncommercial use" and that the user "acquire[s] absolutely no rights or licenses in or to the [Platform] and materials contained within the [Platform] other than the limited right to utilize the [Platform] in accordance with the TOS."

25.    Section C.7.7 of the TOS prohibits multi-user access under a single account: "Customer may not . . . allow more than one individual to use the Services under a single account."

## C.  IEM's Subscription and the PRDOH "ReloCare" Contract

26.    On or about February 6, 2024, the PRDOH Bid Board issued a Notice of Award under Request for Proposals No. CDBG-DRMIT-RFP-2023-05 awarding the program

management services contract for disaster housing solutions to Innovative Emergency Management, Inc. and Tetra Tech, Inc.

27.  PRDOH reissued the award, with a corrected notice, on or about July 22, 2024. The contract is valued at $24,485,614.80 and is funded with federal Community Development Block Grant–Disaster Recovery and Community Development Block Grant–Mitigation funds. Under the contract (the "PRDOH Contract"), IEM is responsible for, among other things, providing program management services in connection with the relocation of approximately 900 displaced households.

28.  On September 19, 2024, Cristian Y. Ramos Miranda, an IEM employee with the title "R3, BRR and SFMIT Relocation and Case Management Manager," using the IEM email address cristian.ramos@iempr.net, signed up for an annual Atlas Professional subscription priced at $499 per year (the "Subscription").

29.  By signing up for the Subscription, IEM accepted and became bound by the TOS, including the restrictions set forth in Sections B.3, B.4(i), C.7.1, and C.7.7.

30.  The Atlas Professional tier is licensed only for limited, noncommercial use as set forth in the TOS.

31.  RED Atlas markets and sells separate, higher-tier enterprise subscriptions designed for large-scale or institutional users.

32.  An enterprise subscription appropriate to IEM's actual use of the Platform under the PRDOH Contract would have cost RED Atlas multiples of the $499 paid by IEM.

33.  By way of comparison, RED Atlas's pre-dispute proposal to IEM dated February 24, 2025 priced an appropriately scoped engagement at $15,000 per month—approximately $180,000 per year, or roughly 360 times the amount IEM paid under the Subscription.

*D. IEM's January 8, 2025 Written Admission*

34.    On January 8, 2025, Mr. Ramos sent an email to RED Atlas's Chief Executive Officer Henry Keenan and other RED Atlas personnel from his IEM email address, with the subject line "IEM-Request" (the "January 8 Email"). The body of the January 8 Email stated, in pertinent part:

>    I am reaching out because we have begun working on an initiative from the Puerto Rico Department of Housing (PRDOH) called 'ReloCare'. The initiative aims at working with a select group of cases to provide diverse resources and forms of support to assist in the search of potential replacement properties. We are to provide updates to PRDOH on a biweekly basis and wanted to use RedAtlas as one of the resources in this experiment. However, the current link is too slow and the reports are not downloading if more than 5 or more properties are added. Can we please be moved to the other version of RedAtlas?

35.    The January 8 Email constitutes IEM's contemporaneous written admission that:

(a) IEM was using the Platform in connection with a PRDOH initiative known as "ReloCare";

(b) IEM intended to provide PRDOH with Platform-derived outputs on a recurring biweekly basis;

(c) IEM was attempting to download Platform-generated reports in volumes (more than five properties at a time) consistent with commercial-scale use; and

(d) IEM recognized that its Atlas Professional subscription was not the appropriate version of the Platform for IEM's actual use case and asked to be moved to "the other version."

### E.  IEM's Unauthorized Use of the Platform

36.    Between September 19, 2024 and at least February 2025, IEM used the Platform for purposes that exceeded the scope of the limited Atlas Professional license and that violated the express prohibitions of the TOS. Specifically, and on information and belief, IEM:

(a) generated numerous property lists and analytical reports containing Platform data;

(b) used Platform-generated reports directly in the performance of the PRDOH Contract to identify and evaluate housing options for displaced households;

(c) utilized the Platform's proprietary database—including its 140,000+ listing records, 1.4 million property records, and 1.5 million transaction records—to fulfill IEM's contractual obligations to PRDOH;

(d) created and distributed reports containing RED Atlas's materials to PRDOH and to displaced households without RED Atlas's express written consent;

(e) printed Platform data and incorporated it into individual beneficiary internal IEM files and government reports submitted to PRDOH; and

(f) permitted multiple IEM personnel to access and use the Platform under a single Atlas Professional account.

37.    By letter dated September 6, 2025, IEM's then-counsel acknowledged in writing that IEM had used the Platform in connection with the PRDOH program. Specifically, that letter stated that "[t]he platform was utilized solely for the purpose of preparing

relocation options for eligible households under PRDOH's relocation program" and acknowledged that data generated through the Platform was printed and incorporated into IEM's individual beneficiary files and government reports.

### F.  RED Atlas's Pre-Suit Resolution Efforts

38.    RED Atlas attempted in good faith to resolve this dispute commercially before filing this action.

39.    On February 24, 2025, RED Atlas presented IEM with a written proposal for an appropriately scoped enterprise engagement supporting IEM's PRDOH disaster housing work, priced at $15,000 per month.

40.    The parties met to discuss the proposal in early March 2025. IEM did not accept the proposal and did not enter into an enterprise license.

41.    On August 18, 22, and 26, 2025, RED Atlas's Chief Executive Officer sent three escalating emails to IEM's then-Chief Executive Officer raising the licensing compliance issue at the executive level and proposing a commercial resolution. IEM did not engage substantively in response.

42.    On September 6, 2025, IEM, through counsel, issued a written response denying that its Platform use violated the TOS.

43.    On September 15, 2025 — nine days after IEM's counsel denied any violation of the TOS — Mr. Ramos submitted a cancellation request to RED Atlas identifying the customer as 'IEM International, Inc.' [sic] and stating that 'IEM no longer requires the subscription services, as they have not been actively utilized.' That representation is materially inconsistent with both the January 8 Email and IEM's counsel's September 6,

2025 acknowledgment that IEM used the Platform in connection with the PRDOH program.

44.    On October 2, 2025, RED Atlas, through counsel, sent IEM a detailed letter setting forth IEM's specific TOS breaches, identifying each violated provision, and citing the January 8 Email as evidence of IEM's commercial use of the Platform.

45.    On October 28, 2025, IEM's outside counsel acknowledged receipt of RED Atlas's October 2 letter and indicated that a substantive response would follow. IEM thereafter ceased engaging with RED Atlas's counsel and did not respond to subsequent requests to meet, postponing and canceling every time a meeting was scheduled.

46.    Having exhausted reasonable efforts to resolve this dispute commercially and without litigation, RED Atlas now files this action.

## V.  FIRST CLAIM FOR RELIEF
### Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.
### (Against All Defendants)

47.    RED Atlas repeats and realleges each of the preceding paragraphs as if fully set forth herein.

48.    The RED Atlas Trade Secrets identified in Paragraph 14 above constitute "trade secrets" within the meaning of 18 U.S.C. § 1839(3) because (a) they derive independent economic value, actual and potential, from not being generally known to or readily ascertainable by other persons who could obtain economic value from their disclosure or use; and (b) RED Atlas has taken reasonable measures, as set forth in Paragraphs 15, 17 and 20-25, to keep them secret.

49.     The RED Atlas Trade Secrets are related to products and services used in, and intended for use in, interstate and foreign commerce, including services provided to clients located outside Puerto Rico.

50.     IEM acquired knowledge of, and access to, the RED Atlas Trade Secrets by improper means within the meaning of 18 U.S.C. § 1839(6), including by accessing the Platform under a license whose scope and conditions IEM knew it was exceeding, and by using the Platform in breach of the TOS to which IEM had assented.

51.     IEM has used and disclosed the RED Atlas Trade Secrets without RED Atlas's express or implied consent, in a manner that exceeded the scope of the Atlas Professional license, including by using Platform outputs to perform a commercial contract for the benefit of a third party (PRDOH) and by redistributing Platform-derived outputs to PRDOH and to displaced households served under the PRDOH Contract.

52.     IEM's misappropriation has been willful and malicious within the meaning of 18 U.S.C. § 1836(b)(3)(C). IEM acquired and used the RED Atlas Trade Secrets with knowledge that its use exceeded the scope of the license, as evidenced by the January 8 Email, in which IEM admitted that its Atlas Professional subscription was inadequate for its actual use case but continued that use without obtaining the necessary commercial license, and as further evidenced by IEM's continuing use of the Platform after multiple notices from RED Atlas.

53.     As a direct and proximate result of IEM's misappropriation, RED Atlas has suffered actual damages, including lost license fees and harm to the value of its trade secrets, in an amount to be proven at trial.

54.  As a direct result of its violation of the Defend Trade Secrets Act, IEM has been unjustly enriched by its misappropriation in an amount to be proven at trial, including by reason of the revenue IEM has received and continues to receive under the PRDOH Contract that IEM was able to perform using the RED Atlas Trade Secrets without paying for an appropriately scoped license.

55.  RED Atlas is entitled to relief under 18 U.S.C. § 1836(b)(3), including: (a) compensatory damages measured by both actual loss and unjust enrichment under 18 U.S.C. § 1836(b)(3)(B)(i); (b) exemplary damages of up to two times those damages under 18 U.S.C. § 1836(b)(3)(C) for willful and malicious misappropriation; and (c) reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

## VI.  SECOND CLAIM FOR RELIEF

### Breach of Contract
### (Against All Defendants)

56.  RED Atlas repeats and realleges each of the preceding paragraphs as if fully set forth herein.

57.  The TOS constitutes a valid and enforceable contract between RED Atlas and IEM. IEM accepted the TOS upon signing up for the Atlas Professional subscription on September 19, 2024.

58.  RED Atlas performed all of its obligations under the TOS by, among other things, providing IEM with access to the Platform during the Subscription term.

59.  IEM materially breached the TOS in at least the following respects:

(a) by using the Platform for commercial purposes in connection with the PRDOH Contract, in violation of TOS § B.3;

(b) by using the Platform for the benefit of a third party—namely, PRDOH and the displaced households served under the PRDOH Contract—in violation of TOS § B.3;

(c) by recirculating, redistributing, and publishing the analysis and presentation included in the Platform without RED Atlas's prior written consent, in violation of TOS § B.3;

(d) by using the Platform to improve the quality of data contributed by IEM to a third party (PRDOH), in violation of TOS § B.3;

(e) by downloading content from the Platform for commercial use, in violation of TOS § B.4(i);

(f) by using the Platform outside the scope of the limited license for "internal business purposes" set forth in TOS § C.7.1; and

(g) by allowing more than one individual to use the Platform under a single account, in violation of TOS § C.7.7.

60.    As a direct and proximate result of IEM's breaches, RED Atlas has been damaged in an amount to be proven at trial, including by reason of unpaid license fees, lost commercial opportunities, and harm to its competitive position.

## VII.  THIRD CLAIM FOR RELIEF

### Unjust Enrichment

- 14 -

**(Pleaded in the Alternative; Against All Defendants)**

61.     RED Atlas repeats and realleges each of the preceding paragraphs as if fully set forth herein. This claim is pleaded in the alternative to RED Atlas's breach-of-contract claim.

62.     To the extent the TOS is held inapplicable, unenforceable, or otherwise not to govern any aspect of IEM's use of the Platform, IEM was nevertheless enriched at RED Atlas's expense by its use of RED Atlas's proprietary Platform—including the Platform's database, integration, matching, and analytics functionality—in performing IEM's $24,485,614.80 contract with PRDOH.

63.     There is no justification at law or in equity for IEM to retain the benefit of RED Atlas's Platform without compensating RED Atlas for the reasonable value of that benefit.

64.     RED Atlas is entitled to restitution from IEM in an amount equal to the reasonable value of IEM's use of the Platform, to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, RED Atlas respectfully requests that this Court enter judgment in its favor and against Defendants, and grant the following relief:

A.      An order under 18 U.S.C. § 1836(b)(3)(A) restraining Defendants and all those in active concert or participation with them from any further use, disclosure, exploitation, or distribution of RED Atlas's trade secrets or Platform-derived materials, and requiring Defendants to return or destroy all RED Atlas Platform-derived materials in their possession, custody, or control;

B.    Compensatory damages in an amount to be proven at trial, measured by both RED Atlas's actual loss and IEM's unjust enrichment, under 18 U.S.C. § 1836(b)(3)(B);

C.    Exemplary damages of up to two times the damages awarded under Paragraph B for willful and malicious misappropriation, pursuant to 18 U.S.C. § 1836(b)(3)(C);

D.    Damages for breach of contract in an amount to be proven at trial;

E.    Restitution, in the alternative, for unjust enrichment, in an amount to be proven at trial;

F.    Reasonable attorneys' fees and costs under 18 U.S.C. § 1836(b)(3)(D) and other applicable law;

G.    Pre- and post-judgment interest at the maximum rate allowed by law; and

H.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff RED Atlas, Inc. demands a trial by jury on all issues so triable.

Dated: May 11, 2026

San Juan, Puerto Rico

Respectfully submitted,

/s/ **Jane Becker Whitaker**
**JANE BECKER WHITAKER**

USDC-PR No. 205110
LAW OFFICES OF JANE BECKER WHITAKER
PO Box 9023914
San Juan, PR 00902-3914
Tel: (787) 585-3824
Email: janebeckerwhitaker@gmail.com
*Attorney for Plaintiff RED Atlas, Inc.*

## CERTIFICATE OF FILING

I HEREBY CERTIFY that on the date listed above, the foregoing was filed with the

Clerk of the Court using the CM/ECF system.

**/s/ Jane Becker Whitaker**
**JANE BECKER WHITAKER**